UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARVIN BIVER, individually
and on behalf of all others
similarly situated,

    Plaintiff,

v.                            Case No. 8:14-cv-250-T-33TGW

NICHOLAS FINANCIAL, INC.,
et al.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Nicholas Financial, Inc.; Peter L. Vosotas; Ralph T. Finkenbrink; Stephen Bragin; Scott Fink; Alton R. Neal; Prospect Capital Corporation; Watershed Acquisition LP; 0988007 B.C., Unlimited Liability Company; and Watershed Operating LLC's Motions to Dismiss (Doc. ## 17, 21), filed on February 28, 2014. On March 17, 2014, Plaintiff Marvin Biver filed a response in opposition to the Motions to Dismiss (Doc. # 37). For the reasons set forth below and for the reasons stated at the hearing held on May 27, 2014, the Court denies in part and grants in part Defendants' Motions.

**I.**   **Background**

On December 18, 2013, Defendants announced the sale of

Nicholas Financial. (Doc. # 1 at ¶ 41, Doc. # 21 at 10). Accordingly, Nicholas Financial hired a financial advisor, Janney Montgomery Scott LLC ("Janney"). (Doc. # 1 at ¶ 38, Doc. # 17 at 11, Doc. # 21 at 11). Janney was contacted by or contacted eighty-eight potential buyers, four of which submitted non-binding bids. (Doc. # 1 at ¶ 45, Doc. # 17 at 11, Doc. # 21 at 11).

In January of 2013, Prospect Capital proposed to acquire all outstanding shares of Nicholas Financial. (Doc. # 17 at 11, Doc. # 21 at 10). Company C initially submitted the highest bid - $17 per share, payable in cash. (Doc. # 1 at ¶ 47, Doc. # 17 at 11). However, Prospect Capital submitted an unsolicited revised bid of $17.10 per share, payable in cash and stock. (Doc. # 1 at ¶ 48, Doc. # 17 at 11). After determining that Company C was unwilling to increase its offer, Nicholas Financial executed a letter of intent with Prospect Capital. (Doc. # 1 at ¶¶ 48, 50, Doc. # 17 at 11).

In October of 2013, after Nicholas Financial provided Prospect Capital with lower earning projections, Prospect Capital lowered its bid to $15.75 per share in stock. (Doc. # 1 at ¶¶ 40, 49, Doc. # 17 at 11-12). This occurred after Nicholas Financial had publicly announced a 16% decrease in earnings for the quarter ending September 30, 2013, and its

stock had declined to $15.24 per share. (Id.).

On December 18, 2013, Nicholas Financial announced that its Board of Directors had entered into an Arrangement Agreement with Prospect Capital and its affiliates under the Business Corporations Act of British Columbia. (Doc. # 1 at ¶ 41, Doc. # 17 at 12). The Agreement states that Nicholas Financial is to be sold to Prospect Capital. (Doc. #1 at ¶¶ 2, 51, Doc. # 21 at 10). Nicholas Financial's shareholders, for each share of Nicholas Financial stock they own, will be provided with shares in Prospect Capital determined by dividing $16 by the volume-weighted average price of Prospect Capital stock for the twenty trading days prior to and ending on the trading day immediately preceding the close of the merger. (Id.).

On January 13, 2014, Nicholas Financial filed a Registration Statement with the U.S. Securities and Exchange Commission, seeking to encourage Nicholas Financial's shareholders to accept the merger with Prospect Capital. (Doc. # 1 at ¶ 3, Doc. # 17 at 12-13, Doc. # 21 at 11). The Registration Statement describes the process by which Nicholas Financial's Board agreed to sell Nicholas Financial to Prospect Capital. (Doc. # 1 at ¶¶ 3, 55). The Registration Statement also provides a summary of the financial analyses

3

and the fairness opinion provided by Janney that the Board relied upon in making its determination. (Doc. # 17 at 12).

Nicholas Financial is incorporated under the Business Corporations Act of British Columbia and, therefore, is subject to mandatory Arrangement approval proceedings before the Supreme Court of British Columbia, the province's superior court ("BC court"), prior to carrying out its merger with Prospect Capital. (Doc. # 1 at ¶ 13, Doc. # 17 at 9-10, 13). Therefore, on January 17, 2014, Nicholas Financial filed a petition with the BC court to initiate the court's review of the Arrangement Agreement. (Doc. # 17 at 13).

Biver initiated this action on February 3, 2014. (Doc. # 1). Within his Complaint, Biver alleges that the Registration Statement filed by Nicholas Financial is "false and materially misleading" because it omits material facts in violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9. (See Doc. # 1).

On February 23, 2014, Biver filed a motion for preliminary injunction that is pending before the Court. (Doc. # 9). On March 7, 2014, Magistrate Judge Pizzo granted the Nicholas Defendants' Motion for Extension of Time to File Response/Reply to the extent that the Nicholas Defendants may respond to Plaintiffs' motion for preliminary injunction

4

within 14 days after the Court's decision on the Nicholas Defendants' Motion to Dismiss, Abstain, or Stay. (Doc. # 29).

On February 28, 2014, Defendants filed the relevant Motions to Dismiss. (Doc. ## 17, 21). Defendants seek to dismiss this action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or based on forum non conveniens. (Id.). In the alternative, Defendants' Motions request the Court to abstain or stay these proceedings on the basis of comity in light of the fact that the petition is currently pending before the B.C. court. (Id.). Biver filed a response in opposition to the Motions on March 17, 2014. (Doc. # 37).

On April 30, 2014, this Court granted the motion of Biver and Richard Abrons for appointment as lead Plaintiffs, approval of selection of co-lead counsel, and consolidation of related cases. (Doc. # 67). As a result, Case No. 8:14-cv-583-T-33TGW was consolidated into Case No. 8:14-cv-250-T-33TGW for all further proceedings; Biver and Abrons were appointed lead Plaintiffs for the consolidated action; and Abbey Spanier, LLP and Robbins Geller Rudman & Dowd, LLP were approved as co-lead counsel for lead Plaintiffs and the potential class. (Id.). Thereafter, on May 27, 2014, this

Court conducted oral argument on the present Motions.

The Court has reviewed the Motions, the response thereto, and the arguments set forth by the parties at oral argument, and is otherwise fully advised in the premises.

**II. Analysis**

    **a. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).

A facial attack on the complaint requires "the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the

6

allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). Factual attacks, in comparison, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings. . . ." Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(quoting Lawrence, 919 F.2d at 1529). When the jurisdictional attack is factual the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. Scarfo, 175 F.3d at 960. Because the very power of the Court to hear the case is at issue, the Court is free to weigh evidence outside the four corners of the complaint. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).

Defendants contend that the "core issues in this case" are derived from the Arrangement approval proceedings under the British Corporations Act of British Columbia and the statutory rights and remedies available to the shareholders, which is within the exclusive authority of the BC court. (Doc. # 17 at 17-18, Doc. # 21 at 13). Specifically, "although Plaintiff attempts to couch his claims in terms of §§ 14(a) and 20(a), the gravamen of his Complaint is within the purview

7

of the BC Court's pending fairness proceedings. . . ." (Doc. # 17 at 17).

Plaintiffs contest Defendants' argument that Plaintiffs' claims are "somehow transformed into claims 'under Canada law.'" (Doc # 37 at 15). Furthermore, Plaintiffs argue that Defendants have "fully availed themselves of the benefits of the United States and the State of Florida for many years, and they will continue to use this forum to commit the alleged section 14(a) violations, including using the Company's headquarters in Clearwater, Florida for the shareholder vote." (Id. at 17).

Defendants do not contest that this Court has subject matter jurisdiction pursuant § 27(a) of the Securities and Exchange Act of 1934 for violations of §§ 14(a) and 20(a) of the 1934 Act and SEC Rule 14(a)-9 promulgated together. (Doc. # 1 at ¶ 10). Although Defendants correctly note that the Arrangement approval proceedings are within the sole jurisdiction of the BC court, Plaintiffs have not brought claims under the Business Corporations Act of British Columbia. Rather, Plaintiffs have brought claims under United States laws: §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9. Accordingly, this Court denies Defendants' Motion to Dismiss for Lack of Subject Matter

8

Jurisdiction.

### b. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### 1. Violation of Section 14(a) and Rule 14a-9

First, Plaintiffs allege a claim under section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9. (See Doc. # 1). To state a claim under section 14(a) of the Exchange Act and Rule 14a-9, a plaintiff must allege that the defendant prepared a proxy statement containing a material misstatement or omission that caused the plaintiff's injury. Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 595 F. Supp. 2d 1253, 1244 (M.D. Fla. 2009), aff'd, 594 F.3d 783 (11th Cir. 2010). The plaintiff must allege that "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." Id. Although not requiring scienter, a section 14(a) claim requires an allegation that the defendant negligently drafted the proxy statement. Id.

Defendants contend that Plaintiffs' section 14(a) claim is subject to the Private Securities Litigation Reform Act's heightened pleading standards. (Doc. # 17 at 25-26, Doc. # 21 at 14). Under these standards, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u–4(b)(1);

10

and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2). Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007).

Contending the heightened pleading standards apply, Defendants posit that Plaintiffs do not identify any false or misleading statements. Specifically, Defendants assert that Plaintiffs fail to identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact. (Doc. # 17 at 26-27, Doc. # 21 at 14-15). Furthermore, Defendants argue that none of the alleged omissions are material as a matter of law. (Doc. # 17 at 27-28, Doc. # 21 at 16). Finally, Defendants argue that they are not required to disclose every facet of Janney's valuation analyses, every detail of Janney's discounted cash flow analysis, or provide a "play by play" of the negotiation process. (Doc. # 17 at 29-33, Doc. # 21 at 18-20).

Upon review of the Complaint, irrespective of whether the heightened pleading standards apply, the Court finds that Plaintiffs have sufficiently alleged a claim under section 14(a) of the Exchange Act and Rule 14a-9 to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Specifically, Plaintiffs

11

allege that, by failing to include an analysis of the future potential of Prospect Capital's stock within the Registration Statement, Defendants omitted a material fact necessary in order to make the statements therein not false or misleading. (Doc. # 1 at ¶¶ 4-8, 57, 74-79). Plaintiffs further allege that the Registration Statement summarizes Janney's two relative valuation analyses and equity discounted cash flow analysis in a manner that fails to provide shareholders with sufficient information to make an informed decision, thus omitting material facts necessary in order to make the statements therein not false or misleading. (Id. at ¶ 61, 68, 74-79). Accordingly, for purposes of the present analysis only, this Court finds that Plaintiffs have alleged their claim under section 14(a) of the Exchange Act and Rule 14a-9 with sufficient particularity to survive a motion to dismiss, under either pleading standard.

### 2. Violation of Section 20(a)

To assert a violation of section 20(a) of the Exchange Act, a plaintiff must allege that the defendant controlled a person who violated any section of the Act. See 15 U.S.C. § 78t(a). "[A]llegations that individuals, because of their management and/or director positions, could control a company's general affairs, including the content of public

statements and financial statements disseminated by its company, are sufficient . . . ." In re Hamilton Bankcorp., Inc. Sec. Litig., 194 F. Supp. 2d 1353, 1359-60 (S.D. Fla. 2002). The "controlling person" will be liable for the acts of the violator "unless the controlling person acted in good faith and did not induce the act or acts constituting the violation or cause of action." Edward J. Goodman Life Income Trust, 595 F. Supp. 2d at 1290-91.

In the Motions, Defendants do not address whether Plaintiffs sufficiently alleged a claim under section 20(a). Instead, Defendants contend that Plaintiffs failed to state a predicate violation under section 14(a), and as a result, Plaintiffs section 20(a) claim "equally falls as a matter of law." (Doc. # 21 at 21). That is because, in order for Plaintiffs' to sufficiently allege a claim under section 20(a), Plaintiffs must adequately allege a predicate violation of the Exchange Act. This Court has already found that Plaintiffs have sufficiently alleged a claim under section 14(a) of the Exchange Act and Rule 14a-9 to survive a motion to dismiss. Therefore, for the reasons stated above, the Court denies Defendants' Motion to Dismiss for Failure to State a Claim.

### c. Motion to Dismiss on the Basis of Forum Non Conveniens

The forum non conveniens determination is committed to the sound discretion of the trial court. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, (1981). "Under the doctrine of forum non conveniens, a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available." CAE USA, Inc. v. XL Ins. Co. Ltd., No. 8:11-cv-64-T-24TBM, 2011 WL 1878160 (M.D. Fla. May 17, 2011)(quoting C.A. La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983)).

When arguing for dismissal on the basis of forum non conveniens, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001). Private factors include: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Wilson v. Island Seas Investments, Ltd., 590 F.3d 1264, 1270 (11th Cir. 2009).

Public factors include: court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant to resolving conflict-of-laws problems and applying foreign law. Id.

The Court notes that "the plaintiffs' choice of forum should rarely be disturbed 'unless the balance is strongly in favor of the defendant.'" SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

After considering the private and public interest factors, the Court finds that the factors weigh in Plaintiffs' favor and rejects Defendants' forum non conveniens argument. Upon due consideration, the Court finds that there is an absence of evidence of unusually extreme circumstances, such that the Court is not thoroughly convinced that material injustice is manifest. See CAE USA, Inc., 2011 WL 1878160 (denying defendant's motion for dismissal due to forum non conveniens on same grounds).

Specifically, the Court finds that the BC court is not an adequate alternative forum to adjudicate all the claims brought by Plaintiffs. Although available, the forum is not

15

entirely adequate because the remedy sought by Plaintiffs involves the interpretation of United States law, not Canadian law. Furthermore, Plaintiffs have a strong interest in having a United States Court determine whether the Registration Statement is false or misleading under United States law. Likewise, because Plaintiffs' claims involve the application and interpretation of United States law, the United States has a strong interest in ensuring that Plaintiffs, United States citizens, are able to pursue their claims in the United States. See SME Racks, 382 F.3d at 1004-05. Finally, Plaintiffs are citizens of the State of Florida and Nicholas Financial maintains its headquarters within the State of Florida, presumably ensuring trial of the case in an expeditious and inexpensive manner. Therefore, the Court denies Defendants' Motion to Dismiss on the Basis of Forum Non Conveniens.

### d. Motion to Abstain

In considering whether to abstain, courts consider several factors including international comity, fairness to the litigants, and the efficient use of scarce judicial resources. Turner Entm't. Co. v. Degeto Film GmbH, 25 F.3d 1512 (11th Cir. 1994). According to the Eleventh Circuit, "[a]bstention is the exception instead of the rule." Ortega

16

Trujillo v. Conover & Co. Communications, Inc., 221 F.3d 1262, 1265 (11th Cir. 2000). Defendants suggest abstention and argue that that (1) United States courts should defer to Canadian courts as to claims involving a Canadian corporation's governance; (2) Canada has a strong interest in regulating the merger approval process of BC corporations, as required by statute; and (3) the BC Court is an adequate alternative forum. (Doc. # 17 at 23-25).

After considering the factors of international comity, fairness to litigants, and judicial economy, the Court denies Defendants' Motion to Abstain. The United States has a strong interest in interpreting and applying United States law – such as Plaintiffs' claims - in a domestic forum. Further, this Court is a more convenient forum – compared to the BC court - for the litigants to address the §§ 14(a) and 20(a) claims on the basis of Plaintiffs' citizenship and Nicholas Financial's corporate headquarters. Accordingly, Defendants' Motion to Abstain is denied.

### e. Motion to Stay

In the alternative, Defendants request a stay pending resolution of Nicholas Financial's Arrangement approval proceedings before the BC court. (Doc. # 17 at 9-10, 25). This Court finds this alternative to be appropriate under the

circumstances.

A limited stay in this action serves multiple purposes. It permits the BC court to conduct its statutorily mandated Arrangement approval proceedings without risking interference from a decision by this Court, thus promoting the doctrine of international comity. In addition, asserting jurisdiction at this stage may subject the parties to conflicting rulings based on the independent application of British Columbia law by the B.C. court and the independent application of United States law by this Court. Furthermore, allowing the Arrangement approval proceedings to occur prior to any rulings by this Court may independently resolve Plaintiffs' claims without requiring this Court to issue a ruling, thus promoting the goal of judicial economy.

For these reasons, this Court grants Defendants' Motion to Stay. Accordingly, this case is stayed and administratively closed, in its entirety, for 120 days or pending resolution of the BC court Arrangement approval proceedings, whichever occurs first. The parties are directed to file joint status reports with this Court within 30 days of this Order and every 30 days thereafter. After 120 days, if the proceedings have not been resolved, the Court will lift the stay and return this case to active status.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Nicholas Financial, Inc.; Peter L. Vosotas; Ralph T. Finkenbrink; Stephen Bragin; Scott Fink; Alton R. Neal; Prospect Capital Corporation; Watershed Acquisition LP; 0988007 B.C., Unlimited Liability Company; and Watershed Operating LLC's Motions to Dismiss (Doc. ## 17, 21) are **GRANTED in part and DENIED in part** as stated herein.

(2) This case is **STAYED and ADMINISTRATIVELY CLOSED**, in its entirety, for 120 days or pending resolution of the British Columbia Supreme Court Arrangement approval proceedings, whichever occurs first. The parties are directed to file joint status reports with this Court within 30 days of this Order and every 30 days thereafter. After 120 days, if the proceedings have not been resolved, the Court will lift the stay and return this case to active status.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of May, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record